UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUGGERO SANTILLI and
CARLA SANTILLI,

      Plaintiffs,

v.                                         CASE NO. 8:17-cv-1797-T-33MAP

PEPIJN VAN ERP, FRANK ISRAEL, and
HOSTING2GO,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

      This is a defamation action stemming from a series of articles that Defendant, Dutch scientist Pepijn Van Erp, posted on his personal blog. Plaintiffs are a scientist and his wife who research antimatter from their Florida laboratory. Antimatter is the opposite of normal matter: all sub-atomic particles have an equivalent antimatter particle with opposite charge and quantum spin. For example, the electron has an antimatter counterpart called the positron with the same mass as an electron but with a positive charge. *See* "What is Antimatter," http://www.physics.org/article-questions.asp?id=105. Revising the maxim that matter can be neither created nor destroyed, scientists now believe that energy and mass are interchangeable – that when a particle collides with its antiparticle, the two annihilate each other (antimatter annihilation), with their mass being entirely converted into energy. *Id*. The rub is that scientists barely detect any antimatter in the observable universe. If antimatter is the opposite of matter, shouldn't there be an equal amount of both? This question has stumped nuclear physicists. Antimatter can be artificially generated and studied in huge particle accelerators, but this process is incredibly expensive. *See* "The Five Greatest Mysteries of

Antimatter," (Apr. 22, 2009), www.newscientist.com/article/mg20227051-600-the-five-greatest-mysteris-of-antimatter/. Enter Plaintiff Ruggero Santilli, who claims to have developed a telescope with a concave lens (rather than convex, as utilized by a traditional telescope) that can detect antimatter (doc. 64, ex. A at 1). He has posted articles about his discovery on the website for his company Thunder Energies and in journals.

Defendant Pepijn Van Erp finds Santilli's discovery inherently suspect. So much so that Van Erp posted entries to his personal blog (www.pepijnvanerp.nl) titled "The Continuing Stupidity of Ruggero Santilli," "Finding JV Kadeisvili-or Mailing with Ruggero M. Santilli," and "More Santilli Shenanigans." (doc. 30, exhs. A-C). These posts inspired viewers' comments, which read like a nerd's version of a fist fight. With Santilli's reputation as a cutting-edge research scientist on the line, Plaintiffs sued Defendants in state court in April 2017 (*see* doc. 2), claiming Defendants' online attacks have defamed Santilli and tortiously interfered with their business of marketing and selling the antimatter telescope (which Thunder Energies dubs the Santilli telescope). Defendants removed the case to this Court.

Although the discovery deadline was yesterday (*see* doc. 15), on March 16, 2018, Plaintiffs moved for the third time to preliminarily enjoin Defendants: they ask the Court to order Defendants to revise the title of one blog post and to remove defamatory content from another (doc. 64).[1] After reviewing Plaintiffs' motion for a preliminary injunction (doc. 64), their exhibits in support (*Id*. at exhs. A-C, Defendants Pepijn Van Erp and Frank Israel's response (doc. 69), and Plaintiffs' operative complaint (doc. 30), I recommend that the Court deny Plaintiffs' motion.

---

[1] The District Judge referred this matter to me for a report and recommendation (doc. 65). After my review of the relevant filings, I find that a hearing would not be helpful in resolving this issue.

*A.     Facts*

In February 2016, Van Erp posted the blog entry "The Continuing Stupidity of Ruggero Santilli" to his website (doc. 30, ex. A). He attached a link to a You Tube video by Thunder Energies titled "Thunder Energies Discovers Invisible Entities" that touts the Santilli telescope's ability to detect antimatter galaxies, antimatter asteroids, and antimatter cosmic rays. Van Erp attempts to debunk Santilli's findings:

> This claim by Santilli might be the easiest to debunk of all the extraordinary claims he has made (like the existence of magnecules and his alternative explanation for why the sun colors red when it sets). The whole concept of antimatter-light is bullshit, because the anti-particle of a photon is simply a photon. So if you want to speak of antimatter-light it's no different than 'normal' light. 'Anti-matter light' will therefore not focus with a concave lens. I will not bother trying to give explanations for the grainy images he took with his Santilli-'out-of-focus'-telescope which he claims show Invisible Terrestrial Entities.

(doc. 30, ex. A at 1-2). Van Erp's criticisms continue: "Santilli writes that he has an article on this discovery of Invisible Terrestrial Entities in press with the American Journal of Modern Physics. That's just one of those fake journals, which will probably print anything if you are willing to pay their fees." (*Id*. at 2). What follows is a string of comments by readers, who look to be scientists, amateur physicists, and followers of the paranormal. Most of these comments are critical of Santilli and his research; those that defend it are posted by a "Frank Stone," who Van Erp posits is actually Santilli. (*Id*. at 6). Some of the comments are benign – "Joaquim" writes, "I'm not really a young person and I've been building optics and telescopes since my youth, as a hobby. When I saw the telescope and that confirmation article, I thought something weird was going on, maybe I was going crazy or the laws of the universe changed while I wasn't looking. I just wanted to thank Mr. Pepijn for restoring my mental sanity." (*Id*. at 4). And some comments are just plain mean – "Christian

Corda" writes, " ' Mr. Stone,' you are Santilli because you have not the balls to use your real name. It is better having my job rather than being a poor old and crackpot man obsessed by false conspiracies like you." (*Id*.). Mostly the comments are a pseudo slug-fest between Van Erp in one corner and Frank Stone in the other.

In August 2016, Van Erp posted "More Santilli Shenanigans" to his blog (doc. 30, ex. C). This article summarizes Santilli's reaction to Van Erp's earlier articles, "The Continuing Stupidity of Ruggero Santilli" and "Finding JV Kadeisvili – or Mailing with Ruggero M Santilli."[2] Apparently, Santilli had sent Van Erp a cease and desist letter through his counsel, which Van Erp blogged about. What most offends Santilli from "More Santilli Shenanigans" – the language he asks the Court to order Van Erp to remove – is Van Erp's accusation that Santilli fabricated an award and bestowed it upon himself:

> To most people it will be clear that this award was instigated by mr. S himself and that he just asked his co-worker Georgiev to organize the signatures. There is a clue that this piece of paper was doctored at the offices of mr. S: the filename of the picture is 'TARPON_2.jpg', which points to the address of his business (1444 Rainville Road, Tarpon Springs, Florida). Im sure that these are just two more events we can add to the long list of fringe activities on Santilli's curriculum vitae.

(doc. 30, ex. C at 4).[3]

---

[2] This article accuses Santilli of reacting to criticisms of his work by publishing articles in support of his research under pseudonyms. Van Erp writes: "The board of the company is filled with relatives. His son is now CEO, his daughter in law CFO and they all pay themselves good salaries. Meanwhile, the company is making losses which run in the millions since start-up. It looks like a pyramid scheme." (doc. 64, ex. B). While this article is included as an exhibit to Plaintiffs' preliminary injunction motion, it is not addressed in the motion. Thus, I do not address it specifically here.

[3] This article is not included as an exhibit to Plaintiffs' preliminary injunction motion, although it is clearly a focus of the injunctive relief Plaintiffs seek. However, it is attached to their second amended complaint (doc. 30, ex. C).

"The Continuing Stupidity of Ruggero Santilli" appears second in a Google search of Santilli (*see* doc. 64, ex. C). Plaintiffs allege that Van Erp's blog has scared off potential investors in Thunder Energies, and they attach two affidavits to their motion from consultants saying just that (*Id.*).

    B.    *Analysis*

A party seeking a preliminary injunction must establish four elements: (1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to them outweighs whatever damage the injunction may cause to the party to be enjoined; and (4) that the injunction, if issued, would not be adverse to the public interest. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 262 F.3d 1297, 1300 (11th Cir. 2001). "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries [the] burden of persuasion on each of [the four] prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001).

        1.    *Availability of Injunctive Relief*

Before diving into the analysis of whether a preliminary injunction is appropriate, I must consider whether injunctive relief is even available to Plaintiffs under these circumstances.[4] Under

---

[4] Although Plaintiffs' motion for a preliminary injunction collectively refers to "Defendants," they do not explain how Defendants Frank Israel and Hosting2Go fit into the fact pattern. In their second amended complaint, Plaintiffs contend Israel (a professor of astronomy in the Netherlands) directed Van Erp to write the blog entries and assisted him with the task (doc. 30 at 5). But Israel's name is not on the blog posts, and he submitted a declaration in support of his motion to dismiss stating that he did not contribute to the articles in any fashion (doc. 35 at 1). Defendant Hosting2Go is the Netherlands-based server that hosts Van Erp's website. Although neither side addresses this, under the Communications Decency Act, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Courts hold that an "interactive computer service" is entitled to "broad federal immunity to any cause of action that would make

Florida law, there is a "well-settled rule prohibiting injunctive relief in defamation cases." *Baker v. Joseph*, 938 F.Supp.2d 1265, 1270 (S.D. Fla. 2013); *see Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So.3d 1086, 1090 (Fla. 3d DCA 2014) (finding injunctive relief unavailable to prohibit defamatory or libelous statements); *Dolen v. Ryals*, No. 8:09-cv-2120-T-23AEP, 2010 WL 2079657, at * 1 (M.D. Fla. May 24, 2010) (adhering to the majority view that absent extraordinary circumstances injunctions should not issue in defamation cases).

If the allegedly defamatory statements constitute or are incidental to conduct that constitutes intentional interference with a potentially advantageous business relationship, however, there is a limited exception to the general rule that equitable relief is unavailable in defamation cases. *Murtagh v. Hurley*, 40 So.3d 62, 66-67 (Fla. 2d DCA 2010); *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So.2d 1371 (Fla. 4th DCA 1987). But there must be an independent basis for invoking equitable jurisdiction. *Murtagh*, 40 So. 3d at 65, citing *Zimmerman*, 505 So. 2d at 1373. In other words, Plaintiffs must establish a clear legal right to injunctive relief on their tortious interference claims because, standing alone, injunctive relief is unavailable on their defamation claims.

2.  *Tortious Interference with Business Relations*

It is clear from Plaintiffs' second amended complaint that they only nominally sue for tortious interference with a business relationship; defamation is the crux of their case. Most of their

---

service providers liable for information originating with a third-party user of the service. *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1318 (M.D. Fla. 2015), quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server. . . ." *Id*. at § 230(f)(2). Plaintiffs do not discuss whether Hosting2Go is an interactive computer service rather than an information content provider. Regardless, for other reasons Plaintiffs have failed to show a likelihood of success on their defamation and tortious interference claims.

complaint alludes to Van Erp's allegedly "false," "malicious," and "disparaging" statements about Santilli on his blog. But, in any event, Plaintiffs have not established that they likely will succeed on their tortious interference claim. To prevail, a plaintiff must prove (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the opposing party; (3) an intentional and unjustified interference with the relationship by the opposing party; and (4) damage to the plaintiff as a result of the breach of that relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994). A plaintiff does not have to prove the existence of an enforceable contract for a particular business relationship to be protected. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). But there must be proximate cause, or an understanding between the plaintiff and the prospective customer or client that would have been consummated but for the defendant's interference. *Ethan Allen*, 647 So. 2d at 814. A mere offer to sell cannot, by itself, support a tortious interference with a business relationship claim. *Id*.

Plaintiffs stumble over the first element of the cause of action. Plaintiffs submit the affidavit of Timothy Scott Wainwright, a "professional management consultant for public companies." (doc. 64, ex. C. at 1). Wainwright does not specify whom he works for or his relationship to Plaintiffs. I deduce that Plaintiffs have retained Wainwright to help market what he calls a Directional Neutron Source (DNS), Santilli-designed technology "intended for scanning of nuclear materials that could be smuggled into suitcase[s] and other containers" (*Id*.) (whether this is the same thing as the Santilli telescope, I cannot venture a guess). Wainwright attests to receiving marketing material ("including a brochure") from Plaintiffs to assist with "commercializing the equipment." (*Id*.). On closer look, it is not Plaintiffs' potential business relationship with Wainwright that Defendants have allegedly disrupted. What Wainwright avers is that Van Erp's blog posts have interfered with his ability to

7

develop business relationships with unnamed and unknown potential investors on Plaintiffs' behalf. This is not the proximate cause contemplated by Florida law.

The second affidavit fares no better. It is by Scott Tadsen, an "investment and security specialist" who seeks "funding to market this pre-production equipment which is technology intended for scanning of nuclear materials that could be smuggled into suitcase[s] and other containers." (doc. 64, ex. C at 3). Tadsen attests that a Google search of Santilli "stops and hinders many people in their tracks as they will not even take the time to go further in their due diligence and instantly reject Plaintiff." (*Id*. at 4). Again, Tadsen's relationship with Plaintiffs is unclear, he does not offer specifics of his job or of his potential customers, and he does not clarify if he was negotiating with a potential investor who was stopped "in their tracks" by what they learned about Santilli online.[5] On this basis alone, Plaintiff's motion for preliminary injunction is due to be denied.

    2.    *Defamation*

        *a.*    *Likelihood of Success on the Merits*

Plaintiffs also are not likely to succeed on the merits of their defamation claims.[6] To meet the requirements for defamation under Florida law, a plaintiff must prove: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual

---

[5] Plaintiffs also cannot meet the other elements of the tort. Indeed, even if Van Erp intended to interfere with Plaintiffs' business dealings (a big "if" – Plaintiffs offer no proof of this), there is no business relationship for him to interfere with, and Plaintiffs do not detail to any degree the damages they suffered as a result of Van Erp's blog.

[6] This is especially so for Plaintiff Carla Santilli. The allegedly defamatory statements are not aimed at her. *See Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 805 (Fla. 1st DCA 1997) (holding that cause of action for group libel cannot be maintained unless libelous statements are of and concerning the plaintiff).

8

damages; and (5) statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018); *Internet Sol. Corp. v. Marshall*, 39 So.3d 1201, 1214 n.8 (Fla. 2010). Libel is "the publication of defamatory matter by written or printed words." *Rapp v. Jews for Jesus, Inc.*, 944 So.2d 460, 465 (Fla. 4th DCA 2006). Statements are libelous per se if they impute to someone a felonious act. *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 771 (S.D. Fla. 1986). *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 12 (1970).

Therefore, true statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Turner v. Wells*, 879 F.3d 1254, 1263 (11th Cir. 2018), citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985) (applying Florida law).[7] Doctrinal protections preserve "the breathing space which freedoms of expression require in order to survive." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (quotation marks, alteration, and citations omitted). Under Florida law, a defendant publishes a "pure opinion" when he comments or opines on facts set forth in the publication or otherwise known or available to the reader as a member of the public. *Id*. "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Id*. Whether a statement is fact or opinion, and whether a statement of fact is susceptible to defamatory interpretation, are questions of law for the court. *Id*. A court should consider statements in their totality, "with attention given to any cautionary terms

---

[7] The District Judge denied Defendants' motion to dismiss in an endorsed order, deciding that the Court can exercise personal jurisdiction over Defendants (*see* docs. 66-68). Neither side addresses whether Van Erp, a Dutch citizen who resides in the Netherlands, can assert First Amendment concerns; but if he can be called into court here, it follows that he can assert all available defenses to the claims against him.

used by the publisher in qualifying the statement." *Id*., citing *Keller*, 778 F.2d at 717.

Plaintiffs' complaint focuses on the following allegedly defamatory statements: Van Erp refers to Santilli as a "fringe scientist," a "mad professor," and a "cunning scam artist" who publishes articles in "fake" journals; he accuses Santilli of fabricating awards; Van Erp writes that Santilli uses pseudonyms online to compliment his own work;[8] and Santilli pays to have his research published (doc. 30 at 5). All in all, "[t]he very nature of the subject matter, tone and insinuations of The Subject Articles, along with stating that Ruggero is continuing in stupidity, reflects negatively on Ruggero in his profession as a scientist and an inventor." (*Id*.)

Read in context, a reasonable reader would recognize Van Erp's posts as inviting intellectual rivals to engage in a scientific disagreement. Labeling Santilli a "mad professor," and a "fringe scientist," are subjective assessments of Santilli's work and not readily capable of being proven true or false. *Id*. at 1264, citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 697 (11th Cir. 2016) (explaining difference between statements of opinion and statements of fact, noting that statements of fact are "readily capable of being proven true or false"). Although Plaintiffs complain that these terms reflect negatively on Santilli's reputation, this does not transform Van Erp's assessment of Santilli into anything other than his opinion. Notably too, Van Erp includes links to Santilli-created content – websites and articles of Santilli's original research – and links to other primary sources he consulted in forming his (often scathing) rebuttal. Under Florida law, commentary or opinion based on accurate facts set forth in an article "are not the stuff of libel." *Id*. at 1265 (collecting cases).

Van Erp's comment that Santilli is a "cunning scam artist," standing alone, may be construed

---

[8] Van Erp argues that the two-year statute of limitations for defamation claims has run on these statements. Although he claims the article "Finding JV Kadeisvili – or Mailing with Ruggero Santilli" was first published on May 30, 2013, that is not clear from the record.

as accusing him of a crime. Here is the entire comment: "Is Santilli just a mad professor? Or is he a cunning scam artist trying to sell his 'Santilli-ofocus-scopes' (or even better: stock in his businesses) to people who fall easily for sciency sounding nonsense? Maybe both ..." (doc. 64, ex. A at 2). This statement – in the form of a question – is non-actionable rhetorical hyperbole that a reasonable reader would interpret as a "vigorous epithet" offered by a scientist who considers Santilli's theories and inventions the stuff of science fiction. *Milkovich*, 497 U.S. at 17, quoting *Greenbelt Coop.*, 398 U.S. at 13-14.

At bottom, this quarrel between Santilli and Van Erp arises from both sides' research into theories that are almost 100 years old regarding how to reconcile combined quantum mechanics with Einstein's theory of relativity. In this context, and considering the cutting-edge nature of Santilli's research into antimatter's theoretical applications, a reasonable reader would expect zealous debate. Significantly, readers were invited to respond to Van Erp's criticism of Santilli as a part of an interactive online discussion. Some of these comments were favorable to Santilli's scientific theories, some were not. The media vehicle Van Erp chose – blog posts on his personal website – is popular for just this type of debate, and is the type of online forum where a reasonable person expects to find controversy and accompanying rhetoric.[9] I find that Plaintiffs are not likely to

---

[9] As an aside, I note that if Plaintiffs' defamation claims fail, their claims for tortious interference with potential business relationships also must fail. *See Ovadia v. Bloom*, 756 So.2d 137, 140-41 (Fla. 3d DCA 2000). Florida adheres to the single publication rule: a single publication may give rise to only a single cause of action, and plaintiffs "may not proceed on multiple claims for the same challenged defamatory actions." *Roca Labs, Inc. v. Consumer Op. Corp.*, No. 8:14-cv-2096-T-33EAJ, 2014 WL 6389657, at * 6 (M.D. Fla. Nov. 16, 2014) (citation and quotations omitted) (adopting report and recommendation). This rule applies to tortious interference claims based on allegedly defamatory statements. Plaintiffs' causes of action are all based on the same blog posts; in other words, their tortious interference claims fail because they arise from the same publication upon which their failed defamation claims are based. *Id.*, quoting *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So.2d 607, 609 (Fla. 4th DCA 1975).

succeed on their defamation claims.[10]

### b. *Irreparable harm*

Undermining their pleas of irreparable harm, this is the third time Plaintiffs have moved for injunctive relief. They filed an "emergency" motion for preliminary injunction (doc. 42) in December 2017 but withdrew it the same day (doc. 43). A month later, they moved for a preliminary injunction again (doc. 45) and in February 2018, after Defendants expended the time, effort, and attorney's fees to respond, Plaintiffs moved to amend their motion (which I granted, denying their then-pending motion as moot) (docs. 53, 54). A month and a half after that, they filed the instant motion (doc. 64). In sum, Van Erp's posts occurred in February and August of 2016 (Plaintiffs do not state when they learned of them), but Plaintiffs did not file suit until April 2017, and then waited until March 2018 to follow through on a motion for an injunction. A preliminary injunction requires showing "imminent" irreparable harm. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citation and quotations omitted). "[A] delay of even [ ] a few months" in moving for a preliminary injunction "militates against a finding of irreparable harm." *Id*. The delay of almost a year between filing suit and finally moving for an injunction "conclusively refutes the claim of an imminent and irreparable injury." *Kazal v. Price*, No. 17-cv-2945-T-23AAS, 2017 WL 6270086, at * 3 (M.D. Fla. Dec. 8, 2017).

### c. *Balance of harms*

An injunction issues only if the prospective harm to the movant from denying the injunction

---

[10] Plaintiffs also do not specify their damages, stating instead that they "are not measurable and cannot be recouped through civil remedy, [so] injunctive relief is appropriate." (doc. 64 at 3). For the reasons explained above, injunctive relief generally is not appropriate in defamation cases, and this case is no exception.

outweighs the harm to the non-moving party from enjoining specific conduct. Santilli contends that Van Erp's statements on his blog have tarnished his reputation, trashed his credibility as a scientist, and caused "serious financial harm to businesses associated with Plaintiffs and third parties, by hurting their reputation, creating a devaluation of certain companies in which the Plaintiffs are shareholders, and creating doubt in the credibility of Ruggero and his scientific findings and businesses." (doc. 30 at 6-7). Wainwright and Tadsen's affidavits claim that the posts have scared off potential investors but do not identify a business transaction that failed as a proximate result of the posts. Based on these purported harms, Plaintiffs claim that the balance of equities favors an injunction.

Plaintiffs insist that Defendants "would not be harmed at all" if an injunction restrains Van Erp's speech. But the Supreme Court has roundly rejected prior restraint as "the most serious and least tolerable infringement on [a person's] First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (collecting cases). Van Erp's First Amendment interests weigh heavily against a preliminary injunction. Plaintiffs fail to show that a balance of equities favors restraining Van Erp's speech.

### d. Public's interest

Prior restraints are the most serious and intolerable of First Amendment infringements. Plaintiffs offer no extraordinary circumstance to justify overriding the strong public policy against imposing a prior restraint on speech. *Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009). Therefore, the public's interest weighs heavily against an injunction, which would operate here as a court-ordered infringement of protected speech.

13

    *e.*  *Rule 65*

Under Rule 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In addition to the above reasons Plaintiffs' motion is deficient, Plaintiffs also do not mention a bond amount.

  C.  *Conclusion*

I recommend:

(1)  Plaintiffs' motion for preliminary injunction (doc. 64) be DENIED.

IT IS SO RECOMMENDED in Tampa, Florida on April 20, 2018.

*[signature]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.